PEOPLE v. GRAFFEO.

(Supreme Court, Appellate Division, Second Department. May 12, 1916.)

1. EXPLOSIVES ⬥⟹5—CRIMINAL PROSECUTION.
    Evidence of threatening letters from a friend of accused, an explosion injuring the building of the threatened person, the running away of accused, and his acts when caught, *held* to warrant the jury in finding the defendant guilty of the crime of "endangering life by maliciously placing explosive near building," defined by Penal Law (Consol. Laws, c. 40) § 1895, as amended by Laws 1914, c. 362.
    [Ed. Note.—For other cases, see Explosives, Cent. Dig. § 2; Dec. Dig. ⬥⟹5.]

2. EXPLOSIVES ⬥⟹5—CRIMINAL PROSECUTION.
    Penal Law, § 1895, as amended in 1914, punishing endangering life by maliciously placing explosive near building, applies to a case where a building is damaged; the phrase in the law, "although no damage 'is done," merely excluding absence of actual damage as a defense.
    [Ed. Note.—For other cases, see Explosives, Cent. Dig. § 2; Dec. Dig. ⬥⟹5.]

3. CRIMINAL LAW ⬥⟹1032(1)—APPEAL AND ERROR—OBJECTION TO INDICTMENT.
    The objection that an indictment under which conviction was had does not state facts constituting a crime, if not raised ·by demurrer or motion on the trial, or in arrest of judgment, cannot be raised for the first time on appeal.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2627; Dec. Dig. ⬥⟹1032(1).]

4. EXPLOSIVES ⬥⟹5—CRIMINAL PROSECUTION.
    Evidence of threatening letters, explosion wrecking store early in the morning, flight of accused, and his conduct when taken, in the absence of proof of any manner in which explosion could have occurred, except from ·act of accused, *held* sufficient proof of the corpus delicti, in a trial for violation of Penal Law, § 1895, as amended in 1914, as to endangering life by maliciously placing explosives.
    [Ed. Note.—For other cases, see Explosives, Cent. Dig. § 2; Dec. Dig. ⬥⟹5.]

Appeal from Kings County Court.

Andrea Graffeo was convicted of crime, and appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

William S. Butler, of Brooklyn, for appellant.

Ralph E. Hemstreet, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

RICH, J. This appeal is from a judgment of the County Court of Kings County, convicting the defendant of the crime of endangering life by maliciously placing explosives near a building, in violation of the provisions of section 1895 of the Penal Law (as amended by Laws 1914, c. 362), which is entitled "Endangering Life by Maliciously Placing Explosive Near Building," and provides that:

"A person who places in, upon, under, against, or near to any building, car, vessel or structure, gunpowder or any other explosive substance, with intent to destroy, throw down, or injure the whole or any part thereof, under such circumstances, that, if the intent were accomplished, human life or safety would be endangered thereby, although no damage is done, is guilty of a felony and upon conviction shall be punished by imprisonment in a state prison for not more than twenty-five years."

The indictment contains three counts, and charges the appellant and one Francesco Giarraputo:

(1) "Of the crime of endangering life by' maliciously placing explosive near building, committed as follows: The defendants on April 6, 1915, in the county of Kings, placed in, upon, under, against, and near to the building and store of Joseph Ingoglia an explosive substance, with intent to destroy, throw down, and injure the whole, or some part thereof, under such circumstances that human life was endangered thereby."

(2) "Of the crime of injury to property, committed as follows: The defendants on April 6, 1915, in the county of Kings, unlawfully and willfully injured and destroyed the following property attached to and part of the building and store owned by Joseph Ingoglia: Three windows and the one door, of the value of fifty-five dollars."

(3) "Of the crime of damaging building or vessel by explosion, committed as follows: The defendants, on April 6, 1915, in the county of Kings, unlawfully and maliciously, by the explosion of an explosive substance, damaged the building and store of Joseph Ingoglia, thereby endangering the life and safety of a human being."

The appellant was given a separate trial, and found guilty upon the first of the three counts of the indictment; the trial court instructing the jury that if they found the defendant guilty of the offense first charged in the indictment the finding would eliminate the other counts. No evidence was offered on the part of the appellant.

[1] The uncontroverted testimony established that Joseph Ingoglia had for several years prior to 1915 owned a building, containing two stores on the ground floor, at the northwest corner of Flushing and Knickerbocker avenues in the borough of Brooklyn. The first floor of the corner building, numbered 1081 on Flushing avenue, he occupied as a drug store, and with his wife lived in apartments on the upper floors over the store; the other building he rented. He was acquainted with Giarraputo, who lived at No. 145 George street, the first street south of Flushing avenue, running in the same direction, intersecting Knickerbocker avenue at a point about 50 feet from Flushing avenue, the house No. 145 being the second house from Knickerbocker avenue, on the west side of said George street. At some time shortly prior to April 6, 1915, Giarraputo came to Ingoglia's store and had a conversation with him which the latter detailed on the trial as follows:

"He said he had done a whole lot of good for me. He had prevented somebody from getting me; but I did not seem to appreciate it, and I had to abide by the consequences. He would not stand by me after that."

A few days later Ingoglia received through the mail a letter, written in the Italian language, of which the following is a translation:

"You are hereby prayed by a number of friends to confide your matters to a bosom friend of yours. It will be better for you to send a thousand dollars. It means life or death. Be careful not to do otherwise—your property will fly up in the air—we have no fear of any one—do not let me write much as it will be better for you. The Black Hand."

The second day after Ingoglia received this letter, Giarraputo appeared and—

"said he had done some good to my brother-in-law, and my brother-in-law did not appreciate that either, and for the small amount of $25 he had fixed matters for him, and instead of being thankful for that he had a grudge against Giarraputo."

Following this talk, Ingoglia received through the mail a second letter in the Italian language, of which the following is a translation:

"Dishonored man and loafer, try to confide with persons who can do you some good and do so at once—it is better for you—otherwise we will decide what to do—we will do it in few days—you will realize our experience—try to send one thousand dollars. Stinker and loafer, say no more to people as you have done. J. G. G."

Immediately after the receipt of this letter, Giarraputo and the defendant came together to the vicinity of Ingoglia's drug store, and the defendant crossed the street and stood there while Giarraputo had a conversation with Ingoglia, which the latter detailed as follows:

"He said he had tried, but he could not prevent these men writing and demanding money from me, but on account of our coming from the same country he would be willing to do a little to help me, if I commissioned him."

He referred to the writers of the letters as his friends, and said that if Ingoglia came to terms he would try to fix it up. The date when the last letter was received does not appear, but on the night of April 5th, at about 11:30 o'clock, Ingoglia closed his store and, after ascertaining by inspection that everything in and about the building was all right, retired to his bed. At about 2 o'clock the next morning he was awakened by an explosion in front of the store, and, upon going to the windows of the front room, saw the defendant running towards George street, into which he turned. There was a large electric light in front of the store, one on the opposite side of the street, and one at the intersection of George street. Ingoglia watched the defendant until he passed out of his sight, then went downstairs and found three windows broken, the bottom part of an outside door blown off, and a hole about eight inches square extending from and through the sidewalk in front of the door, into the cellar. On the same morning, at 1:15 o'clock, a police officer on duty on Flushing avenue at a point a block away from Ingoglia's place of business saw Giarraputo and the defendant going east, and at 20 minutes after 2 saw them coming from the direction of the drug store. At about 2 o'clock one Stichler, residing on Knickerbocker avenue, about 125 feet from George street, was standing in front of his house, when he saw a man whom he was unable to identify running towards George street, into which street he turned, and shortly thereafter heard the noise made by the explosion.

A night watchman, while on Knickerbocker avenue, five blocks away from Ingoglia's store, heard the explosion, was told of a man running into George street, and while investigating saw a flicker of a light in the cellar of the second house from Knickerbocker avenue on such street, which was No. 145, and the house in which Giarraputo then or formerly lived. They proceeded to the cellar, and there found the defendant lying in the corner of a bin, with part of an iron bedstead across his body, and old shoes and wood around him. When asked what he was doing there, he answered that he was afraid of the bomb. Asked where he lived, he replied, "Live here," but later gave his correct residence, 130 Humboldt street. He kissed the hands of the officers, said he had a wife and family, and asked them to let him go. He was taken to Ingoglia's store. Ingoglia testified that the defendant, when brought to the store by the officers, knelt in front of him and said:

"'Please forgive me; we done it, and I will be right over in the morning, and I will do anything you ask for you. * * * I have five children; please let me go this time.' * * * He got hold of my hand, and wanted to kiss it, and said: 'Please forgive me, and I will pay for anything; we done it. But please forgive me. I have five children.'"

He talked in both English and Italian, and was very much excited. The statement, "We done it," was in Italian. Mrs. Ingoglia, who had not retired when the explosion occurred, saw two men pass by the store just before she heard the noise. She details the statements of the defendant in the store as follows:

"As he came in, he went straight to my husband and said: 'Forgive me; we were the ones that did it, but we will not do it any more. I have five children, and if you will forgive me there will be nothing else done after this.' He got hold of his hand, and squeezed it very heartily, and said: 'Forgive me.'"

Mrs. Mangiaracina testified that she was not paying much attention to what the defendant said, but did hear him say:

"Mr. Ingoglia, I want you to have them let me go, please; I am a son of yours—to forgive me. I have five children and a mother. Do for the sake of my mother."

She saw him kneel down and try to kiss Ingoglia's hand. The night watchman heard the defendant talk to Ingoglia in Italian, but did not understand that language. He says:

"I did not hear everything he said. He walked to the back of the store, while I was in the front," with Mr. Ingoglia.

Officer Holman testified that he heard the defendant talking in Italian. Ingoglia testified that the defendant, when he ran away from the store after the explosion, wore a cap and had on an overcoat, and the officers who made the arrest testify that when they found him in the cellar he had on a peaked cap and overcoat. This testimony, wholly uncontradicted, although circumstantial, so far as connecting the defendant with the commission of the offense committed (with the exception of his admissions and confession), was amply sufficient to warrant the jury in finding the defendant guilty of the crime with which he was charged in the first count of the indictment.

158 N.Y.S.—66

[2] The appellant contends that, because of the words "although no damage is done," in section 1895, it has no application to the case at bar, in which actual damage resulting from the explosion was proven, and that the only offense the defendant could be convicted of upon the testimony given was that alleged in the third count of the indictment, damaging the building by the explosion. This contention is without merit. The fact that actual damage was done, and human life and safety thereby, and as the result of such explosion, was endangered, renders the person placing the explosive guilty of a felony under the provisions of section 1895, exactly the same as if no damage had in fact been done, and it had been proven that, if the intent to destroy, throw down, or injure the building by the placing of the explosive had been accomplished by consequent damage or destruction of the building, human life or safety would have been endangered thereby. The words used in the statute, "although no damage is done," do not exclude cases where actual damage is sustained, or limit its application to those cases where for any reason no damage followed the placing of the explosive. They mean no more than that the absence of actual damage in a given case does not constitute, and cannot be proven as, a defense.

[3] The appellant argues that the first count of the indictment, under which the conviction was had, does not state facts sufficient to constitute a crime, and should have been dismissed. He cannot now be heard upon that question, not having demurred or moved upon the trial to dismiss the indictment, or in arrest of judgment, upon such ground. It cannot be raised for the first time on appeal. People v. Wiechers, 179 N. Y. 459, 462, 72 N. E. 501, 1 Ann. Cas. 475.

[4] At the conclusion of the case for the people, the defendant moved to dismiss the indictment upon the ground that the corpus delicti had not been proven to exist, and now argues that his exception to the denial of such motion presents reversible error. He contends that there is no proof justifying the inference that the defendant placed any explosive in, against, or near the building of Ingoglia, or that the damage proven was caused by any explosive substance so placed by any one, and directs attention to the fact that an explosion may be the result of other than a human agency. It is sufficient to say, upon this question, that there was no proof before the jury of any possible manner in which the explosion could have occurred, except as the result of an explosive placed against the building on the outside in carrying out the threat made to Ingoglia that unless $1,000 was paid by him "your property will fly up in the air." The facts were amply sufficient to justify the jury in finding the corpus delicti proven, and to sustain such finding on appeal. The learned trial court submitted the questions of fact to the jury in a charge free from error, in which the rights of the defendants were carefully and amply protected, and all his requests charged.

The judgment of conviction of the County Court of Kings County must be affirmed. All concur.